A. D. FORD and M. A. FORD, Respondents, v. EMORY DELPH, Appellant.

St. Louis Court of Appeals. Opinion Filed April 6, 1920.

1. **REFORMATION OF INSTRUMENTS:** Equity: Varying Terms of Written Conveyance: Character of Proof. For a court of equity to vary the terms of a written agreement on the ground that the paper does not state the real contract of the parties on account of a mutual mistake of fact, the mistake must be established by clear, positive, and unequivocal evidence; equity will not grant relief upon a probability or even a preponderance of evidence, but only upon a certainty of error.

2. **VENDOR AND PURCHASER:** Conveyance of Excess Acreage: Mutual Mistake: Evidence: Insufficient to Show Certainty of error. In an action by a vendor to recover from a purchaser for an excess of acreage conveyed over that agreed upon through mutual mistake, evidence *held* not to show a certainty of error as to the acreage.

3. ————: ————: ————: ————: Burden of Proof. In an action by a vendor to recover from a purchaser for an excess of acreage

conveyed over that agreed upon through mutual mistake, it was encumbent on plaintiffs to show by clear, cogent, and unmistakable evidence that there was a mistake as to the acreage, and *held* this they failed to do.

4. ———: ———: ———: ———: **Sale in Gross: Effect.** In an action by a vendor to recover from a purchaser for an excess of acreage conveyed over that agreed upon through mutual mistake, held under the evidence as a whole that it is uncertain whether the agreement between the parties was not in fact so modified as to make it a sale in gross and not by the acre, and if a sale in gross, plaintiffs are not entitled to relief, as in such case it was a risking bargain or contract of hazard, and they cannot recover for any excess.

5. ———: ———: ———: **Remedies of Vendor: Rescission.** A purchaser cannot be compelled to take and pay for more land than he agreed to buy and cannot be copelled to convey back to the vendor the excess of acreage inasmuch as it cannot be determined which part of the whole tract was the excess acreage; however the vendor may bring a proceeding in equity to rescind the contract on the ground of mutual mistake, giving the purchaser the option of submitting to the rescission or paying the additional proportionate price for the excess in quantity, but in the event the purchaser prefers a rescission rather than a payment for the excess acreage, and in the meantime has improved the land, equity would compel the vendor to pay for the improvement.

Appeal from Cape Girardeau Court of Common Pleas.—
*Hon. John A. Snider,* Judge.

REVERSED.

*Edw. D. Hays* and *Rush H. Limbaugh* for appellants.

(1) This was a sale in gross and not a sale by the acre. Wood v. Murphy, 47 Mo. App. 539; 1 Story's Equity Jurisprudence (11 Ed.), section 144, page 151; 7 Words and Phrases, page 6308; 39 Cyc., pages 1311-1315. (2) In cases of this kind equity requires proof that is clear, convincing and beyond reasonable controversy. The plaintiffs have not made such proof. Brown. v. Gwin, 197 Mo. 506; Griffin v. Miller, 188 Mo. 334; Parker v. Vanhoozer, 142 Mo. 627; Bartlett v. Brown, 121 Mo. 362; 16 Cyc. 70; 17 Cyc. 775, 704, note 96; 1 Story's Equity Jurisprudence (11 Ed.), section 152, page 157; 1 Story's Equity Jurisprudence (11 Ed.), section 157, pages 160-161. (3) Equity cannot grant plaintiffs the

relief they demand, for, (1) To do so it must make a contract of conveyance of the alleged excess acreage and compel the defendant to submit to an agreement he never made, a thing which equity refuses to do. Tesson v. Atlantic Mutual Ins. Co., 40 Mo. 36; Steinberg v. The Phoenix Insurance Co., 49 Mo. App. 264; Page v. Higgins, 150 Mass. 27; Okill v. Whittaker, Before Lord Cottenham, C; 2 Phillips, 338. (a) This would be quite different from compelling a vendor to refund money he has received for land which turned out to be less than he had sold, a principle which is by no means clearly established in Missouri, for in such case equity merely compels the parties to withdraw within the bounds of a contract they have made, while here it is sought to compel the parties to go beyond the bounds of the contract they have made and make a new contract. Engel v. Powell, 154 Mo. App. 233; Housmann v. Adams, 65 Mo. App. 273; Wood v. Murphy, 47 Mo. App. 539; Okill v. Whittaker, Before Lord Cottenham, C; 2 Phillips, 338. (2) Equity does not do justice by halves as it would be doing if the judgment as rendered in this case is permitted to stand. Paris v. Haley, 61 Mo. 453; Trimble v. Wollman, 71 Mo. App. 467; Wehrs v. Sullivan, 217 Mo. 167; Otto v. Young, 227 Mo. 193; 17 Cyc. 134.

*A. M. Spradling* for respondent.

(1) One may show by parol evidence that the contract, which is sought to be specifically performed, even when written, does not through mistake of both or either of the parties, express the real agreement. Engel v. Powell, 154 Mo. App. 233, 239; Gottfried v. Bray, 208 Mo. 652, 658. (2) Where the description of real estate is by metes and bounds, such description must control and determine the number of acres, and the number of acres in the deed must give way to the number of acres determined from the description by metes and bounds. Hendricks v. Vivion, 118 Mo. App. 417, 421; Ayers v. Hayes, 13 Mo. 252, 257. (3) Where a mistake in a deed is mutual and the evidence is clear and convincing to

that effect, a court of equity will reform it. If a vendee acquires real estate by the acre, and through a mutual mistake gets more land than he paid for and retains it, equity will require him to pay for it. Engel v. Powell, 154 Mo. App. 233, 237; Owens v. Railroad, 110 Mo. App. 320, 327; Henderson v. Beasley, 137 Mo. 199, 203; Ezell v. Peyton, 134 Mo. 484, 490. (4) On the facts of the case at bar, the respondents have anchored themselves squarely on the law as announced in the following cases: Engel v. Powell, 154 Mo. App. 233; Housmann v. Adams, 65 Mo. App. 273. (5) The appellant testified that the real estate purchased by him from respondents was staked off by them, and that he agreed to take the amount of land inclosed within those stakes at the sum of $80 per acre. The number of acres determined from the metes and bounds contained in the deed was 126.72. This is the number of acres acquired by appellant, so the lower court in requiring the appellant to pay for the 4.32 acres did not mak. new contract for the parties, but simply required the appellant to pay for the land acquired and not heretofore paid for. (6) If real estate is sold at so much per acre, and through a mistake there is a deficiency in the number of acres conveyed, the purchaser will be entitled to compensation for the amount overpaid. The same principle should apply where there is an excess of acreage conveyed. Hays v. Hays, 11 L. R. A. 376; Newton v. Talles, 9 L. R. A. 50; Singleton v. Castleman, 28 L. R. A. 393 U. S. (7) Where land is sold by the acre, and after delivery of the deed it is found that the tract is larger than the parties supposed, the grantor may recover for the excess. Gilmore v. Kaufman Co., 40 S. W. 40.

BIGGS, C.—Plaintiffs and defendant owned adjoining farms in Cape Girardeau County, Missouri. Following an oral agreement made in January, 1915, the plaintiffs on March 3, 1915, by general warranty deed, for a consideration of $9792, conveyed to defendant a part of their farm, describing it as containing 122.40 acres situated in certain numbered sections, and then

definitely by certain metes and bounds. The description and acreage was obtained after a survey caused to be made by plaintiffs. Several months after the trade was made, plaintiffs caused other computations of the acreage within the lines of the survey to be made by other engineers, and was informed the tract contained 126.72 acres instead of 122.40.

Thereafter plaintiffs demanded of defendant that he pay for the additional alleged acreage at the rate of $80 per acre, the price alleged to have been agreed on by the parties for the tract.

Defendant having refused the demand, this suit in equity was instituted to the February Term 1917 of said court, the petition alleging that the agreed price was $80 per acre; that plaintiffs conveyed 126.72 acres, for which defendant paid $9792, when in fact he should have paid $10137.60; that the acreage specified in the deed 122.40 was erroneous and not the number intended to be conveyed by plaintiffs and accepted by defendant; that the consideration stated in the deed $9792 is erroneous and does not recite the consideration intended, and that the number of acres actually conveyed by plaintiffs and accepted by defendant was 126.72, and that the consideration therefor should have been $10137.60.

The petition further avers:

"Plaintiffs further state that they and defendant were and are now unable to compute the number of acres of said real estate from the description in said deed; that at the time they executed and delivered said deed and the defendant accepted the same, they believed that the number of acres recited therein was correct; that they have since discovered that there are 4.32 acres more of said real estate than the number of acres mentioned in said deed; that the number of acres recited in said deed and the consideration mentioned therein are erronous and do not express the mutual intent of the parties, but that the said deed was executed and deliverd by plaintiffs and accepted by defendant under a mutual mistake of fact as to the number of acres therein and

the amount of the consideration therefor that by reason of such mutual mistake plaintiffs are entitled to $345.60, that is to say, 4.32 acres at the price and sum of $80 per acre; that said amount is a part of the purchase price of said real estate; and that plaintiffs have requested and demanded defendant to pay them the sum of $345.60, but defendant has ever refused and neglected and still refuses and neglects to comply with the said request and demand. Plaintiffs state that they have no adequate remedy at law."

There was a prayer for a decree directing defendant to pay $345.60 and interest, and that said amount be declared a lien upon the property conveyed.

Upon the filing of a general denial there was a trial and decree as prayed, and from which defendant appeals.

In 39 Cyc. 1322, the rule in reference to sales in gross or by the acre is stated as follows:

"Where the sale is by the acre it is ordinarily a matter of course to grant relief for either the excess or deficiency in quantity; but if the sale is in gross the general rule is that each party takes the risk as to any excess or deficiency in quantity and can have no relief against the other on this account, unless there is fraud or the excess or deficiency is so great as to create a presumption of fraud. So if the sale is in gross, or without reference to quantity, the vendor is not entitled to recover for any excess in the estimated quantity, and the purchaser is not entitled to any allowance or abatement in the purchase price for a deficiency, notwithstanding the deficiency is large unless there is fraud or the deficiency is so great as to create a presumption of fraud."

From the record it is plain that at first the oral agreement between the parties contemplated the sale of an uncertain acreage at $80 per acre. This is shown by the testimony of both parties and by the fact that the agreement provided for plaintiffs having a surveyor to run the lines and determine the acreage. However, defendant contends that the testimony shows that after the survey was made and it was reported by the surveyor

Ford v. Delph.

that the tract contained 122.40 acres, there was a question raised by the abstractor as to the location or terminus of a certain line in the survey which might cause the acreage to be less than 122.40, and that thereupon the previous agreement of a sale by the acre was changed by the parties so as to make it a sale in gross, and that the plaintiffs then insisted on the payment of the sum of $9792 regardless of acreage.

It is further asserted by defendant that the effect of the suit is to go behind the written conveyance and in order for a court of equity to vary the terms of that written agreement on the ground that the paper does not state the real contract of the parties on account of a mutual mistake of fact, that the mistake must be established by clear, positive and unequivocal evidence, and that equity should not grant the relief asked upon a probability or even a preponderance of evidence, but only upon a certainty of error. This is good law, and over the rule no controversy arises. It is contended and with reason, that the evidence here does not measure up to the standard and does not clearly establish that the tract of land contained 126.72 acres instead of 122.40.

Plaintiff as stated, caused the tract to be surveyed by one Bain. This survey was not complete as the surveyor did not run the lines around the whole tract but only a part way and to make up the deficiency used the lines, courses and distances given in an old survey. This surveyor reported an acreage of 122.40 and the deed was made accordingly. An abstractor who arranged a loan on the property for defendant made a computation, using Bain's figures and measurements, and reached about the same conclusion as to the acreage. Two other engineers figuring on the same data, one reached the conclusion that the acreage was 126.72, and the other 126.82. There was no new survey made, and all witnesses who figured the acreage used the measurements furnished by Bain.

Plaintiffs assert that the Bain survey is correct as to measurements, but wrong as to acreage. Using the

same measurements and description in the deed, the abstractor calculated the acreage at about the same as did Bain. Two other calculators got a different result. In the absence of a new survey, we do not see how it could be said under this evidence that there was certainly an error as to the acreage.

Assuming it was a sale by the acre, it was incumbent on plaintiffs under the rule to show by clear, cogent and unmistakable evidence that there was a mistake as to. the acreage, and this we think they failed to do.

Taking the evidence as a whole, it is uncertain whether the agreement between the parties was not in fact so modified as to make it a sale in gross and not by the acre. If so plaintiffs are not entitled to relief, as in such a case it was a risking bargain or contract of hazard, and they cannot recover for any excess. When Bain reported 122.40 acres his field notes were turned over to one Shields, an abstractor for defendant, who testified that one of the Bain measurements was longer than the Government measurement called for to the north line of a Spanish Grant and if the line went further than the north line of that grant the tract would lap over on to another owner, and if such was the fact the tract would be short between one and two acres; that he caused plaintiff A. D. Ford and defendant to come to his office and informed them of the probability of the shortage, and thereupon plaintiff said: "Regardless of acreage it takes $9792 to buy that land." Shields is corroborated by the defendant, and while plaintiff Ford denies that he made the statement, he admits on cross-examination that he was present at the conference, and that Shields sent word to him to come down, that there was a mistake in his opinion. Such evidence makes it extremely doubtful as to whether this was a sale in gross or by the acre.

Outside of this there is another reason why the decree cannot stand. It is well established and elemental that neither law nor equity will compel the enforcement of contracts not made by the parties.

Defendant testified that he wanted to buy 100 acres and offered plaintiff $80 per acre, and in this he is not contradicted, Plaintiff A. D. Ford and defendant went over the land and agreed as to about the lines, but neither knew the number of acres within the proposed lines, so the surveyor was employed. Plaintiff thought there was 110 or 115 acres. After the survey was made, plaintiff A. D. Ford, went to defendant and reported the result of the survey as 122.40 acres, and expressed surprise as to the amount being greater than either supposed. Thereupon defendant agreed to take the land at 122.40, and never agreed to buy at any time more than that amount. To enforce this decree against defendant would be to compel him to pay for land he never agreed to buy. While it is true the defendant on cross-examination said it was his intention to buy the acreage within the lines roughly drawn, it is clear that the defendant only intended at first to buy about 100 acres, and that both parties thought the tract contained about that amount, the plaintiff thinking it contained about 110 or 115 acres. The final agreement was made after the report of the surveyor, when the defendant agreed to buy 122.40 acres. This is not a case where the vendor sells an estimated quantity of land by the acre and where the contract is that the vendor sells the tract and the purchaser agrees to give the price stipulated for each acre, no matter how many acres there may be. To give redress in such a case would be to merely specifically execute the contract as made?

Now assuming that we could resolve the other questions in plaintiffs' favor, the defendant at most agreed to buy 122.40 acres and no more. Plaintiffs thought they were selling and the defendant thought he was purchasing that amount by the acre. Now what is vendor's remedy in the event of an excess of acreage? We are not aware of any case in this State involving the question and counsel have referred to us no such case here or elsewhere. The Missouri cases under such circumstances in the event of deficiency in the

acreage give to the vendee the right to sue the vendor in equity and secure a judgment for the deficiency, placing the amount at the number of acres the tract proves deficient multiplied by the agreed price per acre. The reason for this is plain, as it would be inequitable to allow the vendor to hold the proceeds of land which he had not in fact by mistake conveyed to the vendee when he had agreed to do so. [Wood v. Murphy, 47 Mo. App. 539; Housmann v. Adams, 65 Mo. App. 273; Engel v. Powel, 154 Mo. App. 233, 134 S. W. 74.]

That being true it would seem upon the principle of mutuality of right between the vendor and vendee, the former as well as the latter should have redress in the event there was an excess of acreage in such a case. Can the vendor be given the same remedy by being allowed to sue for the excess? We think not, for to do so would compel the purchaser to take and pay for land he never agreed to buy. Can the vendee be compelled to convey back to the vendor the excess acreage? We think not, for it could not be determined which part of the whole tract was the excess acreage.

The proper remedy for the vendor under such circumstances would be to bring a proceeding in equity to rescind the contract on the ground of mutual mistake, giving at the same time to the purchaser the option of submitting to the rescission or paying the additional proportionate price for the excess in quantity for the vendor having conveyed the entire tract supposing it to contain a less quantity mentioned than finally ascertained, for a less price than he would have taken had he known the actual quantity and by said conveyance having conferred on the purchaser absolute title to the whole tract should be content to receive an additional sum in compensation to cover the excess in quantity and should not have the absolute right to insist upon a rescission, but should agree to take compensation for the excess. The purchaser may prefer a rescission rather than a payment for the excess acreage but in the meantime has improved the land. In that event if the pur-

chaser chose rescission equity. would compel the vendor to pay for the improvements.

Those interested will find a full and able discussion of the rights of vendor and purchaser under such circumstances in the old but well considered case of Western Mining and Manufacturing Company v. Peytona Cannel Coal Company, 8 W. Va. 406, 1. c. 437.

For the reasons herein stated, it is recommended that the judgment be reversed.

PER CURIAM:—The foregoing opinion of Briggs, C., is adopted as the opinion of the Court. The judgment of the Circuit Court is accordingly reversed.

· *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.