# BROWN CLIPPARD, Appellant, v. R. C. KNEIBERT, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 8, 1920. Opinion Filed November 3, 1920.

1. **REFORMATION OF INSTRUMENTS: Mistake: Must Be Mutual.** Mutuality of an alleged mistake of fact is an essential ingredient of a cause of action for the reformation of a contract on that ground.

2. ————: **Vendor and Purchaser: Acreage Shortage: Evidence: Land Sold in Solido: Not by the Acre.** In an action by a purchaser of land to recover from the vendor by reason of an alleged shortage in acreage, and for the reformation of the deed which purported to convey a certain number of acres "more or less" on the ground that the deed was executed and accepted by plaintiff under a mistake of fact as to the number of acres and the amount of consideration, evidence reviewed and *held* that there was no mutual mistake in the transaction, and that the land was sold *in solido*, and not by the acre.

3. **VENDOR AND PURCHASER: Acreage Shortage: Vendee Can Recover Either at Law or in Equity.** Money sought to be recovered by a vendee by reason of shortage in acreage, where the land was sold by the acre, can be recovered either at law or in equity.

4. **APPELLATE PRACTICE: Equity Case: Rule of Review: Trial De Novo: Deference to Trial Court.** In an equity case the appellate court weighs the testimony and determines from that the merits of the action; however, great deference is to be paid to the finding of the chancellor who had the witnesses before him, the evidence all being oral.

5. **REFORMATION OF INSTRUMENTS: Equity: Varying Terms of Written Conveyance: Character of Proof.** For an equity court to vary the terms of a written conveyance because the paper does not state the real contract because of a mutual mistake of fact, such mistake must be established by clear, positive and unequivocal evidence.

6. ———: Vendor and Purchaser: Mutual Mistake in Conveyance: Evidence: Insufficient. In an action by the purchaser of land to recover from the vendor by reason of alleged shortage in acreage, and for the reformation of a deed so as to show that the land was sold by the acre, *held* that plaintiff did not make out a case of mutual mistake by clear, positive and unequivocal evidence.

7. ———: ———: Acreage Shortage: Farm Sold for Flat Price: Miscalculation of Acreage: Court Cannot Correct Deed nor Compel Vendor to Sell for Less Than the Price Paid. Where it appears very clear that defendant was selling his farm for a certain flat price, and even if he had arrived at that figure by a miscalculation of the number of acres at a certain price per acre, the appellate court cannot either correct the deed or compel the defendant to sell his farm for less than the price he agreed to sell for and demanded and which plaintiff paid.

Appeal from the Circuit Court of Cape Girardeau County *Hon. Frank Kelly*, Judge.

AFFIRMED.

*A. M. Spradling* and *Hines & Hines* for appellant.

(1) Either in case of fraudulent representations, or of mistake as to the quantity of land in a certain tract conveyed, and, the land is sold by the acre and there is a shortage in acres arising from mutual mistake, equity will grant the purchaser a proportionate abatement of the price, or, if the consideration has been paid, the purchaser may sue in equity and secure a judgment requiring the vendor to restore a portion of the consideration, being the number of acres of shortage multiplied by the agreed price per acre. Engel v. Powell, 154 Mo. App. 233, 237, 238; Hausmann v. Adams, 65 Mo. App. 273; Whittaker v. Miller, 188 Mo. App. 412; Ford v. Delph, decided Apr. 6th by this court. (2) The rule and the reason for it are well stated in the case of Ford v. Delph, in an opinion handed on April 6, 1920, by this court. (3) The fact that the vendor took property at a fixed valuation as part pay is not defensive and is immaterial. Whitaker v. Miller, 188 Mo. App. 412. (4) It is not

defensive and it is wholly immaterial that the representations of the respondent were made to appellant's agent instead of to appellant directly. Judd v. Walker, 215 Mo. 312. (5) Even though the vendee goes upon the land and views it and even though he could have ascertained the true acreage, he has a right to rely upon the statement made by the vendor, and if such statement be false and tht sale be by the acre, he can recover for the storage. Judd v. Walker, 215 Mo. 312; Adams v. Barber, 157 Mo. App. 370, l. c. 396; Kelly v. Peeples, 192 Mo. App. 435, 437, 438-9; Caldwell v. Henry, 76 Mo. 254. (6) On the facts of the case at bar, the respondent has anchored his case squarely on the law as announced in the following cases: Engle v. Powell, supra; Houseman v. Adams, supra, and Ford v. Delph, supra, and Cook v. Smith, 184 Mo. App. 566, 567; McMahan v. Terkhorn, 116 N. E. 327; Hays v. Hays, 11 L. R. A. 376; Sugden on Vendors, page 489; Wald's Pollock on Contracts (3 Ed.), by Williston, 610; Warvelle on Vendors, pp. 838, 839. (7) The consideration may always be inquired into, that is, the consideration expressed in the deed, not to overthrow the deed as a conveyance, but merely to show just what was the amount paid, if any, or that none at all was paid. Lambert v. Estes, 99 Mo. 604. (8) Under the present practice in equity cases this case will be substantially triable *de novo* in this court. Cohron v. Polk, 252 Mo., 281.

*Wilson Cramer* for respondent.

(1) There was no misrepresentation made by defendant to plaintiff and no deception of any kind practiced. He stated his price in lump to be $12,200, and this was agree to by J. C. Clippard, the agent of plaintiff. (2) No mistake occurred in the preparation of the deed. J. C. Clippard, himself directed the consideration to be stated as $12,000, and the description of the land was taken, word for word, from the deed of March 6, 1906, from Howard to Kneibert, to which reference

is made. The land in question was conveyed by metes and bounds and plaintiff could as easily have had the calculation of the quantity made at the time as afterwards. The case falls directly within the rule laid down in the case of Hendricks v. Vivion, 118 Mo. App. 417. (4) The finding of facts by the court below stands as the verdict of a jury and is not subject to review.

REYNOLDS, P. J.—This suit was instituted to the April, 1917, term of the circuit court of Cape Girardeau County, the petition averring that the defendant and his wife, by general warranty deed, of date March 25, 1916, had conveyed to plaintiff a tract of land described, the description being by metes and bounds, concluding with the statement, "and containing in the aggregate 203.59 acres, more or less. Being the same land acquired by parties of the first part (defendant and wife) by warranty deed dated March 6, 1916, from Edward Howard and wife and recorded in Book 46, page 426, of land records of Cape Girardeau County, to which deed reference is hereby made." The year written is an error; it should be 1906. It is set out in the petition that in buying the land plaintiff bought and paid for it by the acre, at the price and sum of $60 per acre for 203 acres, and $20 for the fraction of an acre, making a total consideration of $12,200, which was paid to defendant by plaintiff for the farm; that the deed of conveyance from defendant to plaintiff recited the consideration of $12,000 but that the correct consideration paid was $12,200. It is further averred that the purchase and sale was per acre and not *in solido;* that the number of acres specified in the deed was erroneous but that plaintiff did not know of the error and shortage at the time of his purchase, and did not know it until he had gone into possession of the land under the deed; that in entering upon and farming over the land he was led to believe that there was an error, a shortage in the acreage; that at the time he accepted the deed and paid for the land he believed the number of acres recited

therein was correct and so believed until the shortage was discovered; that on discovering this he made demand of defendant to refund $600 of the purchase price, arising by reason of the shortage but that defendant refused to refund any portion whatever of the purchase price; that by reason of the error contained in the deed as to the number of acres embraced in the tract described, the deed does not truly express the intent of the parties thereto but was executed by the defendant and wife and accepted by plaintiff under a mistake of fact as to the number of acres and the amount of consideration as herein stated. Plaintiff further avers that he purchased the land on the representation of defendant that the tract contained 203.59 acres and that by mistake, oversight or omission the deed conveying the land to him did not expressly warrant to plaintiff said number of acres. Averring that by reason of the mistake of $600 in the purchase price, arising from the shortage of acreage, plaintiff is entitled to the refund of that sum, which he avers he has demanded but that defendant has refused to pay, plaintiff avers that he has no adequate remedy at law and prays for a decree directing and compelling the defendant to pay plaintiff the sum of $600, the portion of the purchase price paid to defendant by plaintiff by reason of the said mistake and which should be refunded by defendant because of the shortage in the number of acres in the farm as before set out, "and for all other, further or different relief to which he may be entitled in equity and good conscience by reason of the premises." To this a general denial was filed by way of answer.

When the cause came on for trial the parties waived a jury and submitted the cause to the determination of the court on the evidence adduced and on the pleadings. At the conclusion of the trial the court found for the defendant and entered judgment accordingly, from which plaintiff has duly appealed.

It appears that the purchase was really negotiated by one J. C. Clippard, the father of Brown Clippard,

the plaintiff. Brown Clippard testifies to that fact, and that the purchase was made about March 25, 1916; that he did not have any conversation with defendant before the execution of the deed; had paid defendant $60 an acre for this tract of land, a total of $12,200. The deed was then offered in evidence, is in the usual form of a general warranty deed, as before set out, stating the acreage at 203.59, more or less, and the consideration at $12,000.

J. C. Clippard, sworn, testified that he remembered negotiating with defendant the trade for the purchase of the land for his son sometime in 1916, along about March 25th of that year, it being the land described in the deed and in the petition; had talked with his son about it beforehand. One morning he called defendant up and asked him to meet him down town. Whereupon witness met defendant on the sidewalk in Jackson and said to him that he understood that he (Kneibert) wanted to sell his place. Kneibert said he had offered to sell it. Clippard asked him about the price and defendant said he wanted $60 an acre for it. Clippard asked him how much there was in the tract, and defendant said there was about 203⅓ acres—something like that; did not remember that he named the fraction exactly, but something near 203½ acres. Clippard asked him to knock off "that three acres and the fraction," and Kneibert said that he would not; that he wanted $200 for the fraction. Clippard said that it looked like he (defendant) could knock that off and make it $12,000 to which defendant said "No," that he couldn't do it. Clippard then said to defendant: "I thought maybe I could give you a deal for that place provided you would take a piece of property over in East Jackson that I have." Defendant did not give him much satisfaction about that but asked Clippard what he wanted for it. Clippard told him he wanted to put it in the trade at $3000, to which defendant said he would not consider it without seeing his wife, or letting her look at it. They came to no conclusion but decided

to go out to Clippard's house; which they did in a day or two, to look at the property. Clippard could never get Kneibert to say he would take $12,000 for his farm. Kneibert and his wife looked Clippard's house over and said he would only take it at $2500. They finally traded for $12,200, Kneibert to take the house at $2500. Asked if there was anything said then about how the land was to be sold, witness said: "Well, I don't know whether there was then or not but that was the basis of it, that it was $60 an acre. . . . I don't know that I can tell the exact words. ，. . I wouldn't get up here and say he said just word for word—. . . My understanding was I was to get 203 acres and a fraction for $12,200, and I would put my house in for $2500." Asked if his understanding from his conversation with Kneibert was that he was buying by the acre, witness answered: "Sixty dollars an acre; now, I confirm this if it is necessary." Asked if there was anything said between them about the fraction of an acre, witness answered: "Well, nothing more than what I have said; there was three and a fraction." Asked how much he was to pay for the fraction of an acre, witness answered: "Well twenty dollars; three acres would be a hundred and eighty and the fraction would be twenty dollars, make it two hundred dollars." Asked if he agreed with defendant to pay $20 for the fraction, witness answered, "Yes, sir. . . . I was in conversation one day with Mr. Kneibert and I asked him what I give him for this: if I give him $60 an acre, and he said 'Yes.' That was before another man." Witness said that the actual amount paid "was $12,200, a deed of trust for $8000— he assumed that on the place, the house $2500;" and that he was to get "203 acres and a fraction, 'something about a half,' he (defendant) said." (Witness afterwards said, on cross-examination, that the deed of trust was for $8000.) Asked why $12,000 was put in the deed as the consideration instead of $12,200, witness said that he did not recollect exactly, but it was in consequence of some conversation between Kneibert, himself

and his son, the actual consideration paid was $12,200. Witness repeated that later he had discovered that the number of acres mentioned in the deed was wrong; that when he bought for his son he thought he was getting 203 acres and a half; thought that for two or three months, then sent the deed down to a surveyor "and asked him to count it." Asked how many acres he thought were in the tract at the time he accepted the deed, he answered: "Well, from the reading of the deed I concluded my son was getting two hundred and three acres and a half, or about a half." Asked what Kneibert said to him, if anything, about the number of acres, witness answered: "Well, I don't know. I think Mr. Kneibert stated there in the bank, but I couldn't say for sure; somebody asked him what he was getting for the place and I think he said he was getting $60 an acre, or $12,200. I wouldn't say for sure, but I think he said that." Asked what he said to him about the number of acres, he answered: "Well, he told me when he priced it at $60 an acre it would come to $12,200; two hundred and three and a fraction, about a half." Asked how many times he told him the number of acres, witness said: "I guess he told me that every time we were in conversation about it. . . . I guess I talked twice over the phone and maybe twice down here in town." Asked if his impression was that Clippard (defendant) had told him there were 203 and a fraction acres each time he talked with him, witness answered: "Well, I couldn't say it was every time but I will testify he told me there were 203 and a fraction acres."

On cross-examination witness testified that he was 72 years old and had been a farmer but was now "loafing" around Jackson dealing in real estate; had known this farm, which was called "the Howard farm," probably 60 years, and used to ride by there with his grandfather. He had aproached defendant about the trade, calling him over the telephone; could not say that every time they talked of the matter he had approached defendant; had called defendant on the telephone the first

time, and witness repeated that they had agreed upon $60 an acre as the price. Asked what defendant had said to him about the quantity of acres, witness answered that he said: ''There were two hundred and three and something near a half.'' Asked if defendant had said anything more in that conversation, witness said he did not know whether he had or not; that he might have said he put that fraction at $20. This question was asked: ''I will ask you, Mr. Clippard, if it isn't true he told you 'according to the deed there was 203 acres and a fraction;' now isn't that the language?'' Witness answered: ''Well, I wouldn't say whether it was or not, Mr. Cramer; anyway, I understood there were 203 and a fraction.'' Counsel repeated that he was asking him if defendant had not told him that ''according to his deed there were $\frac{2}{3}$ acres.'' Witness answered: ''Well, he might have said the deed called for that.'' They were negotiating for the sale several days and before he bought, by appointment with Clippard, he went out to look at the farm. Witness had asked $3000 for his house but defendant would not allow but $2500, and finally the Clippard place was traded in at that. Up to that time witness had not examined the deed from Howard to defendant. Asked if he did not know when he accepted the deed that it contained this language about the description, ''and containing in the aggregate 203.59 acres, more or less, being the same land acquired by party of the first part by warranty deed dated March 6, 1906, from Ed. Howard and wife and recorded in book 46, page 426, of the land records of Cape Girardeau County,'' witness answered: ''Well, I guess I heard it read or saw it maybe.'' Asked if he had made any effort to ascertain the actual quantity of land by survey or otherwise, witness answered: ''No, sir; I'll tell you what my understanding was in regard to that. I thought where that 'more or less' came in, meant a fraction or perhaps an acre. I didn't think it meant ten acres. I didn't think he could deed a piece of land away for ten acres more than what was there just by saying 'more

or less.' I thought if there was a fraction he would do that.'' Witness read the deed before it was delivered. It was written at the bank and at that time his son paid $1700 in cash, turned in the house at $2500, making $4200, and gave a deed of trust back to defendant for $8000. The deed was written by a Mr. Boss at the Savings Bank.

On redirect examination, asked to tell the court exactly what Kneibert had said to him about the number of acres in this tract, plaintiff answered: ''Well, he said this, . . . that at $60 an acre it would come to $12,200, and he wouldn't take off anything, 203 acres and about a half but he counted it three and one third; three acres would be $180 and one-third would be $20.'' When defendant told witness there were so many acres at $60 an acre and that it amounted to $12,200, was when he tried to get defendant down on the price. Asked how many times he had talked with defendant about the amount he was to pay and the number of acres he was to get, witness answered: ''Oh, I don't know; I guess I called him up twice over the phone.'' Asked to tell the court whether defendant said the deed called for 203 acres, or whether he said there were 203 acres in the tract, witness answered: ''Oh, I don't know; I guess I called him up twice over the phone.'' Asked to tell the court whether defendant said the deed called for 203 acres, or whether he said there were 203 acres in the tract, witness answered: ''Well, at the beginning, when we met in town the first time, I asked him what he asked and he said he wanted $60 an acre and that's what it would take to get it. I says, 'How much is there?' and he said, 'Two hundred and three and a half,' but he would count it 203 acres an one-third, and I was in conversation with Kneibert one day and I asked him what I give him, if I didn't give $60 an, acre, and he said, 'Yes.' '' That, said witness on recross-examination, was after the deed had been made. Asked by counsel for defendant if he would testify that defendant told him there were 203 acres and a fraction, or that

there was that much according to the deed, witness answered: ''Well, I would say he told me that, because I asked him what he wanted for the place and he said he wanted 'sixty dollars an acre.' Now, how could he make it $12,200 without counting it 203 and one-third.'' Whereupon counsel said to him, that what he wanted to know was whether he said there were 203 and one-third or one-half acres according to the deed. Witness answered, ''Well, he might have said the deed said that, and he said there was that; counting it at $60 an acre, it would make it $12,200.''

It is not necessary to set out the testimony of other witnesses. Two surveyors, estimating the acreage from the boundaries called for in the deed, calculated the acreage at about 10 acres lower than the amount stated in the deed. Neither of them, however, had surveyed and measured the land on the ground and in their calculation and the methods adopted by them there was some slight difference in their calculation. Several witnesses testified that in conversations they had had, or had heard, respondent Kneibert had been asked what he got for his land and had said $60 an acre. None of them, however, testified to his saying that he had sold it by the acre. One of these witnesses, called by the plaintiff, said Kneibert had told him that he asked $60 an acre and that Mr. Clippard ''tried to 'Jew' him and he told him he wasn't no Jew; that he was selling him the place at $60 an acre, just like he got it, 203 acres and a fraction and he said Mr. Clippard counted it up and it was a fraction over $12,200 and he asked him if he couldn't take the fraction off and he told him he would take that off;'' said he was selling this land for $60 an acre, ''what the deed called for,'' and told this witness how much he was getting, $12,200, and said that Mr. Clippard ''tried to Jew him down some and he told him he wasn't no Jew, if he wanted it at $60 an acre he would sell it.'' This occurred after the sale, witness said, on cross-examination. Clippard told witness that he was on a trade. All that Kneibert told him

was that he had traded; that he got $60 an acre for what his deed called for, 203 acres and a fraction; that was about all he said.

There was testimony as to the demand for the refund of the $600 and the refusal of Kneibert to pay, saying that he had consulted as to his liability and was told that he was not liable.

Sworn as a witness in his own behalf, Kneibert testified at great length to the effect that Mr. Clippard, Sr., had approached him about the deal and they finally came to a conclusion about it, Mr. Clippard endeavoring to have him lower his price of $12,200, which he refused to do. Defendant's testimony was very clear and positive to the effect that he had not sold by the acreage; had supposed that the acreage stated in the deed was correct but had sold for the lump sum of $12,200; that while he had taken into consideration in arriving at this figure that he was asking $60 an acre, he was not making a sale by acreage but for the whole tract. A survey defendant had made showed 200.10 acres in the tract.

On cross-examination defendant said the acreage only came up once in conversation with Clippard, when he told Clippard the deed to him called for 203.50 acres and he thought that was the number; sold the place for $12,200.

"Q. In making your price the lump sum of $12,200, you never did figure how much per acre that would be?"

Witness answered:

"No, I never did figure on what 203⅓ acres would come to $60 an acre; it was my understanding that there was 203.59 acres, and I got that understanding when I bought it and I still had that understanding when I sold it to Mr. Clippard. I had wanted $60 an acre prior to the time I sold it to Mr. Clippard; but when he asked me to knock off the odds and make it even, then I established the solid price of $12,200. Nothing was ever said to me about the number of acres in the tract before the deed was made; the only thing I had to go by was

the deed; Mr. Clippard did not ask me the number of acres before the deed was made; not until he came back some months afterwards and said it was short.''

Plaintiff was recalled for examination and testified that when Kneiber testified to the trade, that is to say, that he was to get $12,200 for the whole tract, taking in payment of it $1700 in cash, a house belonging to the older Clippard at a valuation of $2500, and a deed of trust for $8000, executed by plaintiff to secure this amount.

In rebuttal plaintiff testified that when he executed the deed of trust, in which the land was described as in the deed, as containing 203.59 acres, he did not then know that there was a shortage in the acreage, and that Kneibert had told him when he sold that he thought there were 203.59 acres and had sold the tract in good faith, so believing.

As before said, at the conclusion of the testimony the court found for the defendant, from which finding the appeal has been fully taken.

In a decision to be filed at the same time with this one, in the case of In re Estate of Anthony Miller, etc., William Miller, Executor v. Miller, Judge Becker, speaking for our court and treating of the necessity of a mutual mistake to correct an agreement, says: ''Thus it is readily apparent that there was no mutuality of the alleged mistake, and the mutuality of an alleged mistake of fact is an essential ingredient of a cause of action for the reformation of a contract on that ground,'' citing authorities. So in the case at bar there was no mutual mistake in it. While there might have been a mistake discovered after the transaction as to the number of acres in the tract, that was not such a mistake on the part of the defendant or even of the parties, considering the circumstances which the great weight of evidence shows was the actual condition of the sale, that is to say that the farm was sold *in solido* for $12,000. While it might be true that in arriving at that figure there was some mistake as to the number of acres in

the farm, the great preponderance of the evidence satisfies us, as it certainly did the trial court, that the number of acres was a very immaterial matter. The price asked was *in solido* and after a great deal of controversy between the parties as to the odd fraction, in an endeavor to reduce that price as *in solido,* not by the acre, defendant standing on it, insisted on that as the only amount for which he would sell or trade his place, and plaintiff's agent acquiesced.

It is contended by the learned counsel for appellant that this is a suit in equity, while counsel for the respondent claims that it is clearly an action at law, referring to the fact that it was so treated in the lower court, each party, in open court, waiving a jury and trying the cause to the court. Undoubtedly the petition is based on the idea of a suit in equity. Money sought to be recovered in this way can be recovered either at law or in equity; in law, as an action to recover money owed by defendant to plaintiff and which *ex aequo et bono* he should repay, that being an equitable element engrafted upon a legal action. It is not very material in this case, however, how we treat this action, whether at law or in equity; for the appellant challenges the evidence in the case as affording no sufficient or substantial basis for the finding of the trial court. That has necessitated our reading all the testimony and giving it the consideration which it should be given. Of course, if an action at law, we are bound by the finding of the trial court, if supported by substantial evidence; but if in equity, we weigh the testimony ourselves and determine from that the merits of the action. Even then, it has always been held that great deference is to be paid to the finding of the chancellor who had the witnesses before him, as here, the evidence all being oral.

It has been said by Mr. Commissioner Biggs, speaking for our court in Ford v. Delph, 220 S. W. 719, not yet officially reported, and here following the syllabi, which correctly states the substance of the opinion:

"For an equity court to vary the terms of a written conveyance because the paper does not state the real contract because of a mutual mistake of fact, such mistake must be established by clear, positive, and unequivocal evidence . . . ."

The facts presented in that case are practically the converse to those here. In that case the vendor attempted to recover more than the price paid and called for in the deed, on the ground that there had been a mistake in the quantity of acres conveyed. Ample authority is cited by our learned Commissioner for this conclusion.

Applying it to the case at bar and treating this as a case in equity, we cannot say that plaintiff has made out a case of alleged mutual mistake "by clear, positive and unequivocal evidence." The evidence of plaintiff's father, who acted for him in the transaction, is not "clear, positive and unequivocal." It can be gathered even from that testimony, that this was a sale *in solido,* not by the acre, the acreage only being used incidentally to determine the total price that defendant asked for his farm. In the case at bar plaintiff distinctly pleads in his petition that by "mistake, oversight or omission the deed conveying the land to him did not expressly warrant to the plaintiff said number of acres." In point of fact, we gather from the reading of the whole testimony, even that of the plaintiff, that this was a sale *in solido* for $12,200, neither party paying any particular attention to the number of acres in the farm. The only contention that seems to have arisen between the parties is as to whether defendant would not throw off for 3.59 acres of the 203.59 acres "more or less," specified in the deed. It was in connection with this that defendant said to plaintiff, who objected to his price of $12,200, that defendant said he was "not a Jew" and was standing on the price.

Under the circumstances we certainly cannot compel the defendant to take $600 less for his farm than he was selling it for. Nor can we reform the deed to cor-

rect the number of acres. It appears very clear that defendant was selling his farm for this $12,200, flat, and even if he had arrived at that figure by a miscalculation of the number of acres at $60 an acre, we cannot either correct the deed or compel him to sell his farm for $600 less than the price he agreed to sell for and demanded and which plaintiff paid. If we had a case here of the plaintiff tendering back the deed for the land and demanding back the $12,200, it would be a different one. We cannot, under the facts in this case, make a new contract for the parties and compel performance of that.

Finding no reversible error in the trial of the cause, or in the result arrived at by the learned trial court, the judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.*, concur.